UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | No. 23-MJ-000034 |
| | ) | |
| **KENDRID HAMLIN,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## **OPPOSITION TO GOVERNMENT'S RESPONSE TO DEFENSE MOTION AND MEMORANDUM FOR PRETRIAL RELEASE**

Mr. Kendrid Hamlin, through undersigned counsel, respectfully submits this opposition to the government's response to the defense's motion for pretrial release. First, this Court should not consider the arguments concerning Mr. Hamlin's putative dangerousness. Second, whether the Court assesses Mr. Hamlin's potential dangerousness to the community or not, Mr. Hamlin is not a serious risk of flight as required by 18 U.S.C.A. § 3142(f)(2)(A). Finally, to the extent that any concerns raised by the government are valid, there are conditions of release available that will reasonably assure Mr. Hamlin appears for court. The Court should release Mr. Hamlin with an order to follow the highly restrictive conditions proposed by the Defense in ECF No. 19.

### LEGAL STANDARD

Per the Bail Reform Act of 1984 ("BRA"), 18 U.S.C. §§ 3141–3156, a defendant should be released before trial if on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). However, the BRA also provides that a detention hearing must be held at the government's request if it proffers that the defendant poses a serious risk of flight. *Id.* at § 3142(f)(2)(A). A determination that an individual is a flight risk must be supported by a

preponderance of the evidence. *United States v. Vortis*, 785 F.2d 327, 328–29 (D.C. Cir. 1986) (per curiam).

The four factors a court must consider in the determination of whether there are conditions of release that will assure the appearance of the person as required and the safety of any other person and the community are (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Application of the fourth factor is unsettled in this circuit. The government argues that the fourth factor is equally relevant to the Court's determination, regardless of whether the detention hearing is triggered by subsection (f)(1)(A) relating to dangerousness or (f)(2) relating to serious risk of flight. The circuits that have analyzed the issue have concluded that once a detention hearing is triggered by (f)(2), an individual's potential dangerousness does not factor into the detention decision but is limited to determining what release conditions are appropriate. Based upon the text of the statute, the Supreme Court's interpretation of that statute, and Congress' intent, this Court should reject the government's broad interpretation of the Bail Reform Act and limit its analysis to whether the government has proven, by a preponderance of the evidence, that there are no conditions or set of conditions that reasonably assure that Mr. Hamlin will appear in court.

**ARGUMENT**

To begin, the government appears to concede that Mr. Hamlin cannot be detained under 18 U.S.C. § 3142(f)(1)(a).  It argues, instead that even though the detention hearing is based upon an allegation of serious risk of flight under §3142(f)(1)(b), that the Court is required to consider whether the fourth factor which analyzes the "nature and seriousness of [a person's] dangerousness."  But the government does not explain *how* this factor would relate to the ultimate question before the Court, that is, whether the government has shown by preponderance of the evidence that Mr. Hamlin is a serious risk of flight.  Instead, it suggests that once a detention hearing is granted after a government proffer, the analysis for a dangerousness hold is no different from the analysis for a flight hold.  But such an interpretation makes little sense given how explicitly and narrowly the BRA permitted preventive detention based upon dangerousness.

Moreover, the result would be absurd.  The government would then be entitled to a hearing after a proffer for a serious risk of flight; the Court could find that there was no risk of flight at all but still detain the defendant based upon a finding of dangerousness, even though the charged offense did not qualify for a dangerousness hold.

But even if the government successfully convinces the Court that it is correct in all of its legal positions, the Court cannot detain Mr. Hamlin.  Should the Court find (as it should) that, with conditions, the government has not proven that Mr. Hamlin actually is a serious risk of flight and the government still fails in demonstrating by clear and convincing evidence that conditions cannot actually reasonably assure the safety of the community.  *See United States v. Runsdorf*, No. 22-8015-WM, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022) ("This threshold inquiry of whether a detention hearing can be held at all is distinct from the separate (and later)

inquiry whether there are conditions of release that would reasonably assure a defendant's appearance in court and the safety of the community.").

> I. **This Court should follow the First and Third Circuits analysis and determine that the government cannot rely solely upon dangerousness for the Court to grant a hold under 3142 (f)(1)(a).**

The government correctly notes that there is no binding precedent applicable to this issue but the two circuits that have thoroughly analyzed the issue disagree with the government's interpretation of the BRA.[1]  Simply put, the government's interpretation would craft a Trojan Horse exception to the Bail Reform Act that would allow a court to preventatively detain an individual based upon "dangerousness" with any proffer of a serious risk of flight.[2]  This interpretation is not what the BRA says and is certainly not what the legislature intended in reforming the federal bail statute.

The Third Circuit's in-depth analysis in *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) exposes the flaws in the government's logic.  Noting that prior to the BRA, preventive detention for dangerousness was only available in capital cases, the court held that the BRA does not "authorize[] pretrial detention upon proof of danger to the community other than from those offenses which will support a motion for detention." *Id.  Himler's* reasoning was three-fold.

---

[1] In addition, in a case that did not squarely involve a request for detention because of flight, the Fifth Circuit found that "a defendant's threat to the safety of other persons or to the community, standing alone, will not justify pre-trial detention. *United States v. Byrd*, 969 F.2d 106, 109-10 (5th Cir. 1992); *see also United States v. Giordano*, 370 F.Supp.2d 1256, 1262-63 (S.D. Fla. 2005) (holding that the "'dangerousness'" prong for pretrial detention under section 3142(e) only applies to cases that arise under section 3142(f)(1).").

[2] For example, consider an individual who once was late to a status hearing because of transportation issues.  The court there would issue a bench warrant and upon arrival of the individual, have that bench quashed.  In a subsequent misdemeanor possession of marijuana on federal property case, the government would be permitted to request a hold under 18 U.S.C. (f)(2) alleging a serious risk of flight.  The government could then pivot at the detention hearing and allege dangerousness and potentially preventively detain the individual, even though possession of marijuana is not one of the charges under the narrow exceptions of (f)(1)(a).

First, Congress had the opportunity to authorize pretrial detention in any case where a defendant has a criminal record but declined to do so. Second, Congress constructed a "narrowly-drafted statute with the pretrial detention provision addressed to the danger from a 'small but identifiable group of particularly dangerous defendants.'" *Id.* (citations omitted). Third, Congress applied *Salerno's* long-held principle that "[p]retrial detention may not be considered except under carefully specified circumstances." *Id.* "Therefore it is reasonable to interpret the statute as authorizing detention only upon proof of a likelihood of flight, a threatened obstruction of justice or a danger of recidivism in one or more of the crimes actually specified by the bail statute." *Id.*

The Third Circuit's interpretation of the BRA is particularly reasonable because it allows for the Court to consider the danger a person may present to the community but "only in setting conditions of release," an interpretation consistent with the structure of the BRA. This tracks the legislative purpose of the BRA which was to make additional offenses available for pretrial detention and amend the previous bail statute so that if "a judicial officer finds that release on personal recognizance or unsecured appearance bond will not provide the requisite assurances, the judicial officer must impose the least restrictive bail conditions necessary to assure appearance and safety." *Id.* at 159. Thus, whereas under the previous bail statute, "bail and other conditions of release were imposed solely to assure the appearance of the accused in court," the BRA permitted the use of conditions to reasonably assure the safety of the community even where the statute does not authorize detention based upon a finding of dangerousness.

This court is also further guided by the Supreme Court in *Salerno* that found that the BRA "carefully limits the circumstances under which preventive detention may be sought to the most serious crimes." *United States v. Salerno*, 481 U.S. 739 (1987). The First Circuit thus concluded: "[W]here detention is based on dangerousness grounds, it can be ordered only in

cases involving one of the circumstances set forth in §3142(f)(1)." *United States v. Ploof,* 851 F.2d 7 (1st Cir. 1988). It added:

> We believe, however, the structure of the statute and its legislative history make it clear that Congress did not intent to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists. To conclude otherwise would be to ignore the statement in the legislative history that the 'circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial."

*Id.* at 11 (citations and quotations omitted).

The court in *United States v. Gibson* offers a textualist approach in reaching the same conclusion. 384 F. Supp. 3d 955, 964 (N.D. Ind. 2019). In *Gibson*, the Court noted that subsection (f) states that the court should determine both the appearance of the defendant and the safety of the community. But whereas subsection (f)(1) comports with either purpose, subsection (f)(2)(A) does not:

> [T]here is no rational supporting the application of the safety to the community mandate to (f)(2)(A)'s language. The specific clause 'serious risk of flight' controls over the general inquiry into both risk of flight and danger to the community, especially since the (f)(2)(A) criterion appears merely to restate the historic ground for detention that existed prior to the 1984 enactment of the Bail Reform Act, which did not allow for a consideration of danger to the community.

*Id.* at 963.

*Gibson* notes the inherent attractiveness of the government's interpretation – it is certainly safer for the community, and for a judge, if everyone who shows a modicum of dangerousness is incarcerated. But like this Court, *Gibson* was constricted by constitutional mandates and the text of the Bail Reform Act itself: "[The government's] broad reading of the Bail Reform Act has the potential to apply the Act to a nearly limitless range of cases, thereby raising constitutional concerns under the Due Process Clause of the Fifth Amendment and the Eighth Amendment's ban on excessive bail." *Id.*

*United States v. Chavez-Rivas* also relies upon the text of the BRA combined with the constitutional concerns articulated in *Salerno*. 536 F. Supp. 2d 962, 967 (E.D. Wis. 2008). There, the court noted that the "conclusion that [a court] could detain as a danger a defendant not falling within §3142(f)(1) seem at odds with Congress's language and with the Supreme Court's narrow interpretation of the Act. (citing *Salerno*, 481 U.S. at 747) ("The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes.")).[3]

**II.     Mr. Hamlin is not a serious risk of flight.**

There is not a serious risk that Mr. Hamlin will flee the jurisdiction or that he will intentionally avoid appearing in court. *See United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021). The government contends that due to missed court dates in the past, Mr. Hamlin has a tendency towards absconding, and that this amounts to overwhelming evidence of his risk of flight. (Gov't Reply at 11). However, Congress has prescribed "serious risk of flight" and the risk of non-appearance as separate requirements. *White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *8; (*Gibson*, 384 F. Supp. 3d at 965) ("Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward."). A risk of flight seems to suggest an intentional and active effort to put oneself outside of the purview of the court, whereas non-appearance can cover negligent and other non-intentional circumstances. *White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *8. Further, if a case does not involve a "serious risk

---

[3] Even if the Court agrees with the government's interpretation of the Bail Reform Act, the government has not demonstrated by clear and convincing evidence that Mr. Hamlin poses a danger to the community, with the conditions proposed by the defense. Similar to the allegations here, Mr. Hamlin's offenses primarily appear to stem from his poverty and/or mental health. It is indisputable that the nature of the offense here does not connote the narrow category of serious offenses eligible for detention under the BRA.

of flight" then the government's request for detention fails at step one. *Id.* "The ordinary meaning of 'flee' [under (f)(2)(A)] suggests volitional conduct." *United States v. Ailon-Ailon*, 875 F,3d 1334, 1338 (10th Cir. 2017).

Mr. Hamlin's missed court appearances were unintentional, and his absences were not made with the purpose of obstructing justice or avoiding the court. Mr. Hamlin has experienced homelessness, mental health problems, and other issues that have attributed to his absences, and he likely can attend court proceedings with a release plan and conditions to his release. Additionally, Mr. Hamlin has family in the DC area and has lived in DC his whole life and has never left the jurisdiction.

### III.  There are conditions that can reasonably assure the Court that Mr. Hamlin will appear in court.

Finally and most significantly, the support provided by Samaritan Inn in combination with the detailed release plan presented by the defense reasonably assures that he will attend court proceedings as required. If the government wishes to detain Mr. Hamlin, they must show that even if there is a risk of flight, that risk cannot be mitigated by a condition or combination of conditions that will "reasonably assure the appearance of the person as required." 18 U.S.C.A. § 3142 (West). The government fails to meet that burden.

The government has not shown that Mr. Hamlin has had the combination of release conditions that the defense suggests. Release conditions of location monitoring and a stable residence where Mr. Hamlin can receive mental health services and addiction treatment would greatly benefit Mr. Hamlin, and would ensure his appearance in court. Additionally, because of Mr. Hamlin's lower guideline range, he will likely be returned to the community in the not-too-distant future, and will be inclined to abide by the conditions of his release.

### IV.  Conclusion

For the foregoing reasons, Mr. Hamlin respectfully requests that this Court release him to residential inpatient treatment with mental health treatment with GPS monitoring.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Kathryn D'Adamo Guevara
Eugene Ohm
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500