UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 23-CR-00105-JEB |
| | : |
| KENDRID KHALIL HAMLIN, | : |
| | : |
| Defendant. | : |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. For the reasons set forth below, the government requests that the Court impose a total sentence of 39 months of incarceration to be followed by three years of supervised release.

### FACTUAL BACKGROUND

On the morning of Thursday, February 9, 2023, Defendant Kendrid Khalil Hamlin entered a building vestibule around 4:30 a.m., in the 300 Block of H Street, Northeast, in Washington, D.C. With him, he had a bicycle and some bags of clothing. He was unable to gain access to the lobby of the building, and he proceeded to remove his shoes and defecate in the building's small vestibule area. He remained in the vestibule until he was able to gain access to the lobby after another person exited the building and opened the door. Once inside, at approximately 6:00 a.m., the defendant remained in the lobby area, generally pacing around. During the hour or so he was in the lobby, he put on a white surgical mask and removed his shoes.

Around 7:10 a.m., Representative Angie Craig, a Member of Congress representing the Second Congressional District of the State of Minnesota, entered the lobby of the apartment complex, having just taken the elevator down from her apartment level. After getting coffee in the

1

lobby of the apartment building, she noticed an unknown individual pacing in the lobby. The Representative did not recognize the defendant but stated "good morning" to him. She noted he was acting erratically.

After getting a cup of coffee, Representative Craig proceeded to enter the elevator, swiping her building access card and selecting a floor of the building. Before the doors closed, the defendant stuck his arm between the door, preventing the door from closing, and jumped inside the elevator with the Representative. Representative Craig then pushed a button to stop the elevator from going up and told him words to the effect of "I'm sorry…you have to have an access card to come up past the lobby." When she told him this, Defendant Hamlin dropped down on the elevator floor to do pushups. After doing approximately three or four pushups, Defendant Hamlin told Representative Craig words to the effect of "I need to go to your apartment, take me to your apartment." In response, Representative Craig told him, in a sterner voice, that he had to get off the elevator. At this, Defendant Hamlin became very agitated and came chest-to-chest with Representative Craig. Then, he turned to jump in front of the elevator doors and the elevator buttons, blocking them. Defendant Hamlin then pushed Representative Craig, and then immediately he took a closed fist and punched her in the jaw. This punch caused Representative Craig to fall back, being thrown off balance by the strike. At this point, Representative Craig realized she needed to get out of the elevator to escape this violent situation. As she turned to try to access the buttons to open the elevator doors to escape, Defendant Hamlin took a position behind her and pulled her back from the elevator buttons. While physically preventing Representative Craig from opening the elevator doors, Defendant Hamlin placed his hands on her collarbone, on her neck area. As this assault was occurring, Representative Craig threw her hot coffee over her shoulder, causing Defendant Hamlin to let go of her. At this point, the elevator doors opened. As

Representative Craig tried to flee the elevator, Defendant Hamlin tried to keep her from exiting. Once Representative Craig was eventually able to leave the elevator, she started screaming. In response, Defendant Hamlin fled down the stairwell.  Once the defendant had fled down the stairwell, Representative Craig returned to her apartment, locked the door behind her, and called 911.

At 7:14 a.m., the defendant was recorded by the building's video security camera escaping through a back-alley door. Before leaving, he put his shoes back on and rode his bike out of the building to flee.

During the assault, the defendant caused Representative Craig to suffer injuries, including a cut lip which caused a visible abrasion and caused small amounts of bleeding, a bruise on her chin that lasted for several days, and physical pain that lasted for several days.

As a result of a call to emergency services, officers from the Metropolitan Police Department (MPD) responded to the scene. The Representative provided law enforcement a description of the defendant, and law enforcement officers reviewed and collected surveillance video footage from the building's managers.

The defendant was located at around 4:50 p.m. near the intersection of D Street Northwest and 2nd Street Northwest, which is less than a mile from the building where the assault occurred. The officers confirmed the defendant's identity and attempted to place him under arrest.

During this attempt, the defendant fought the officers, biting Detective S.G. in the back of his shoulder. The bite did not leave a mark or break the skin, but it did rip the fabric of the officer's shirt.  After the arrest, the defendant said he was injured (he said he was hit by a train and had a sore ankle because of the arrest) and so he was taken to the hospital. While there, prior to getting medical treatment, he tried to move his handcuffs from his back to the front and was otherwise

acting erratically – for example, slamming his head into a wall. As MPD officers tried to prevent him from doing so, he bit one of the female officers, Officer K.C., in the wrist area. The bite left a mark and left a hole through the fabric of the officer's shirt, but it did not break the skin. The defendant has been in custody since his arrest on February 9, 2023.

## PROCEDURAL HISTORY

On February 10, 2023, Defendant Hamlin was charged by Criminal Complaint with one count of Assault on a Member of Congress, in violation of 18 U.S.C. § 351(e). On March 30, 2023, Defendant Hamlin was indicted on one count of Assault on a Member of Congress and two Counts of Assault on a Law Enforcement Officer, in violation of 22 D.C. Code § 405(b). On June 1, 2023, Defendant Hamlin pled guilty to the 3 Count Indictment without a plea agreement. Sentencing is scheduled for November 17, 2023.

## DEFENDANT'S SENTENCING GUIDELINES RANGE

The defendant's base offense level calculation for Count One is 7 under U.S.S.G. § 2A2.3(a)(1). A two-level specific offense characteristic applies as the victim sustained bodily injury. U.S.S.G. §2A2.3(b)(1)(A). The defendant is entitled to a two-level decrease for the Acceptance of Responsibility under U.S.S.G. §3E1.1(a). As there is no evidence to suggest that Representative Craig was targeted as a result of her official position, no enhancement is applicable under the Official Victim guideline enhancement under U.S.S.G. § 3A1.2. The defendant is calculated to have 17 criminal history points, which places him in the maximum criminal history category of VI. As set forth below, the two-level enhancement for restraint of victim under U.S.S.G. §3A1.3 applies.

## Adjustment for Restraint of Victim

The two-level adjustment for Restraint of Victim under U.S.S.G. §3A1.3 applies in this case because Defendant Hamlin physically restrained Representative Craig during the course of the offense. U.S.S.G. §3A1.3 notes that "physically restrained" is defined in the Commentary to § 1B1.1. That section provides: "'Physically restrained' means the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1, Note 1(L).

The D.C. Circuit Court of Appeals examined restraint of victim in *United States v. Drew*. 200 F.3d 871 (D.C. Cir. 2000). In that case, the Court stated that the note's references to being "tied, bound, or locked up" are listed by way of example, and do not limit the definition of "restraint" to those three specific actions. *Id. at 880.* The Court explained, "the phrase 'being tied, bound, or locked up' indicates that physical restraint requires the defendant either to restrain the victim through bodily contact or to confine the victim in some way." *Id*. In holding that "the required restraint must…be physical," the Court found the application of the enhancement did not apply to a factual background where the defendant did not physically touch the victim, and any restraint was part of the offense itself. *Id*. In sum, this holding means there must be physical contact leading to some form of restraint, separate from the criminal act itself.

Cases from other U.S. Circuits are helpful in understanding the degree necessary to establish any physical restraint. The Fourth Circuit found application of the restraint enhancement proper for a defendant who prevented a victim from leaving a room by standing in a door and pushing her back into the room. The room where the victim was confined contained a lit fuse on an explosive device. *United States v. Stokley*, 881 F.2d 114, 116 (4th Cir. 1989). In another case, the Eighth Circuit found application of the restraint enhancement proper for a defendant who locked the doors to the victim's residence, keeping her inside, and pinning her with her arms behind

5

her back. *United States v. Waugh*, 207 F.3d 1098, 1101 (8th Cir. 2000). Both cases belie any view that the restraint of a victim must be particularly egregious or heinous. In fact, the guidelines themselves state that if "the restraint was sufficiently egregious, an upward departure may be warranted." U.S.S.G. §3A1.3, Note 3.

In this case, while Representative Craig was trapped in an elevator, Defendant Hamlin physically restrained her in that space. After he punched her, she turned to gain access to the elevator buttons in an attempt to escape. At that point, Defendant Hamlin used his hands to pull her back, restraining her movement. He grabbed Representative Craig's collar bone and neck area to prevent her from accessing the elevator buttons. She was pulled back and was prevented from moving forward. When the elevator door opened, he tried to pull her back into the elevator, only stopping after she used her hot coffee to defend herself. Without question, Defendant Hamlin used physical restraint on Representative Craig. Therefore, the Restraint of Victim enhancement applies in this case, and the defendant's offense level should be increased by two points under U.S.S.G. §3A1.3.

## Criminal History Calculation

Based on the recent amendments to the Sentencing Guidelines that went into effect on November 1, 2023, the defendant would not receive two status points from the application of U.S.S.G § 4A1.1(d) in effect prior to November 1, 2023, for committing the current offense while under a criminal justice sentence in another case. Rather, he would only receive one status point, resulting in a total criminal history score of 17 points.

As a result, his applicable advisory guideline range in this case establishes a Total Offense Level of 9, and a Criminal History Category VI, with the resulting guidelines sentence being between 21 months and 27 months imprisonment on Count 1. Counts 2 and 3 are misdemeanors

to which the D.C. Voluntary Sentencing Guidelines do not apply, but each offense carries a maximum of six months imprisonment. Presentence Report (PSR) para. 33-34.

## SENTENCING FACTORS UNDER 18 U.S.C. § 3553

In sentencing the defendant, the Court must take into account the factors set forth in 18 U.S.C. § 3553(a), as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

        (I) issued by the Sentencing Commission….; and

        (II) that, . . . are in effect on the date the defendant is sentenced; …

(5) any pertinent policy statement—

    (A) issued by the Sentencing Commission … and

    (B) that, . . . is in effect on the date the defendant is sentenced.

7

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## SENTENCING ARGUMENT

The government requests this Court impose a 39-month period of incarceration and a three-year term of supervised release. Specifically, the government recommends a sentence of 27 months for the assault on Representative Craig (Count 1), and 6 months on each of the assaults on the officers (Counts 2 and 3), with all sentences to run consecutively to each other. While this sentence is at the high end of the guidelines range, the sentence is justified for numerous reasons, including the nature and circumstances of this offense, the defendant's egregious criminal history, his demonstrated inability to comply with any form of supervised release, and his continued commission of acts of violence while incarcerated.

### A. Nature and Circumstances of the Offense

The defendant's early morning assault of woman in her own apartment building elevator transformed an everyday ritual, going to get a morning cup of coffee, into a traumatic ordeal that has caused lasting emotional damage. The government anticipates the Court will hear more detail on this trauma directly from the victim, and expects to provide the Court with her victim impact statement prior to sentencing. But the facts alone attest to the egregious circumstances of this offense: a woman beaten and assaulted in her own residence; inside an elevator, which is by its nature a small, confined space; punched in the face suffering bruising and a cut; and, restrained from making an escape and forced to fight her way off the elevator. Representative Craig suffered

8

bodily injury, which required minor medical treatment, and to this day, experiences the trauma associated with being a victim of a violent crime.

Furthermore, two police officers[1] were assaulted while they were trying to do their job – in the case of Detective S.G., while conducting an arrest, and in the case of Officer C.K., while trying to prevent the defendant from harming himself or others at the hospital. In both cases against the officers, defendant bit them with his teeth.

These facts justify the need for a significant sentence to account for these violent acts, especially considering the defendant has prior convictions for assaults on police officers (PSR para. 46), prior convictions for assaulting corrections officers (PSR para. 40), prior convictions for biting police officers (PSR para 44), multiple prior arrests for assaulting police officers that were not charged (PSR para. 70, 72, 79, 80) and assaulting corrections officers while in pre-trial detention in this case (PSR para. 5).

**B. The History and Characteristics of the Defendant**

Of all four sentencing factors, Defendant Hamlin's extraordinary criminal history and his continuation of violent conduct even while incarcerated demonstrate the need for a sentence at the high end of the Guidelines range.

The defendant's lengthy criminal history makes clear that he poses a significant danger to the community. As a 27-year old, the defendant has amassed nine convictions which score criminal history points, three other convictions that do not score points, and has been arrested 28 other times. PSR para. 35-82. One third of the defendant's twelve previous convictions include violent behavior, including assaults (MD matter 1D00415787, D.C. matters 2022-CMD-6906, 2016-CMD-18853), robbery and attempted robbery (MD matter 138720C and D.C. Matter 2015-CF3-

---

[1] Detective S.G. and Officer C.K. were contacted by representatives of the government and have declined to provide victim impact statements.

9

9721), and a home invasion that plead out to unlawful entry and second-degree theft (D.C. matter 2015-CF3-18179). PSR para. 37, 38, 40, 42, 43 and 46. In three of those matters, the defendant's criminal actions have already left a devastating wake in his path. For instance, his actions in 2015-CF3-18179 led to the victim moving out of the district entirely, as she no longer felt safe in the city. Dtk. 27 at 18. The attempted robbery conviction from 2015-CF3-9721 involved a co-conspirator shooting the victim while the two attempted to steal his bicycle. PSR para 37. The victim was later forced to leave his job due the injury he sustained. Dkt. 27 at 18.

While the defendant previously characterized his criminal history as "petty," Dkt. 19 at 8, this is clearly unsupported by the facts of his prior convictions, which are not parking or traffic offenses, but violent actions perpetrated against real victims. Moreover, in addition to his convictions for violent conduct, he has at least nine prior additional arrests for violent or threatening conduct where the cases were either no papered or dismissed as part of plea agreements.

The defendant's actions have also shown that he is unwilling to abide by conditions of release, justifying the need for a significant sentence to incarceration to promote respect for the law. A timeline of Defendant's Hamlin's recent criminal history, based on electronic court records in D.C. Superior Court and records from pretrial services, illustrates this point:

| Date | Action |
| --- | --- |
| 7/20/2015 | Charged with Assault with a Dangerous Weapon in Case 2015-CF3-009721 |
| 7/27/2015 | Placed into High Intensity Supervision Program at Halfway House |
| 8/31/2015 | Show cause order filed; defendant failed to comply with conditions |
| 9/09/2015 | Bench Warrant Issued |
| 9/30/2015 | While still on supervision in Case 2015-CF3-009721, arrested for Distr. Controlled Substances in Case 2015-CF2-018183; Bench Warrant Executed |

| | |
|---|---|
| 10/1/2015 | Released in Specialized Supervision Unit, with order to attend mental health services |
| 10/21/2015 | Defendant late for court appearance, admonished |
| 12/31/2015 | While still on supervision in Case 2015-CF3-009721 and 2015-CF2-018183, arrested for Burglary (2nd Degree) in case 2015-CF3-18179, Held without bond |
| 1/26/2016 | Defense files motion to release, stating that defendant "poses no flight risk" is eligible for specialized supervision unit and would "benefit greatly from participating in their services." Case 2015-CF2-018183, Motion for Modification of Release Conditions Filed Attorney, filed on 1/26/2016. |
| 1/29/2016 | Defendant released into High Intensity Supervision Program, with an order to maintain mental health services as ordered by pre-trial services. |
| 2/12/2016 | Order to show cause issued for failing to comply with conditions. |
| 2/15/2016 | While still on supervision in Case 2015-CF3-009721, 2015-CF2-018183, and 2015-CF3-18179, arrested for Destruction of Property in Case 2016-CMD-2170, defendant arrested for destroying glass on the counter of a restaurant in DC after becoming angry |
| 2/19/2016 | Held without Bond in case 2015-CF3-18179 |
| 3/15/2016 | Released into Specialized Supervision Unit with conditions to maintain mental health services and drug program attendance |
| 3/16/2016 | Order to show cause issued for failing to comply with conditions. |
| 3/17/2016 | Bench Warrant Issued |
| 5/27/2016 | Bench Warrant Executed, Held without Bond |
| 7/28/2016 | Order for competency evaluation, admitted to St. Elizabeth's for competency evaluation. |
| 8/30/2016 | Defendant found competent, Held without Bond |
| 9/30/2016 | Guilty plea in cases 2015-CF3-9721, 2015-CF2-18183, 2015-CF3-18179, Held without Bond |

| | |
|---|---|
| 11/17/2016 | While pending sentencing in 2015-CF3-9721, 2015-CF2-18183, and 2015-CF3-18179, charged with Assault on a Police Officer (Corrections Officer), simple assault in Case 2016-CMD-018853, based on the defendant throwing human feces and urine on a corrections officer, striking the officer on the shirt and pants with the feces and urine |
| 12/05/2016 | Sentencing in cases 2015-CF3-9721, 2015-CF2-18183, 2015-CF3-18179, sentenced to 18 months ESS all but 6 months in 2015-CF3-9721, 180 days ESS all but 105 days in 2015-CF3-18183, and 10 days in 2015-CF2-18183 |
| 12/31/2016 | Released from jail from sentence, on post-conviction probation |
| 1/19/2017 | Show cause order filed; defendant failed to comply with conditions, Failure to Appear, Bench Warrant Issued |
| 1/23/2017 | Bench Warrant Return hearing, released on conditions |
| 2/13/2017 | Show cause order filed; defendant failed to comply with conditions including GPS Tampering charge |
| 2/17/2017 | Failure to Appear, Bench Warrant issued |
| 3/9/2017 | Bench Warrant Returned Executed, Held without Bond |
| 4/14/2017 | Released on personal recognizance for hearing on 4/28/2017 |
| 4/28/2017 | Failure to Appear, Bench Warrant Issued |
| 5/1/2017 | Probation Terminated as Unsuccessful in 2015-CF3-18179, Probation Revoked in 2015-CF3-9721; resentenced to 8 months confinement followed by 1-year supervised release |
| 5/09/2017 | Failure to Appear, Bench Warrant Issued |
| 5/30/2017 | Arrested in Hannover, VA for False Identify to Law Enforcement. GC17009010 |
| 7/25/2017 | Failure to appear at status hearing in 2016-CMD-18853, Bench Warrant Issued |
| 7/26/2017 | Charged with Bail Reform Act violation in case 2017-CMD-12772 |
| 7/28/2017 | Pleads guilty to 2016-CMD-18853, Sentenced to probation |

| Date | Event |
|---|---|
| 9/11/2017 | Order to show cause on probation violations |
| 10/6/2017 | Failure to Appear Bench Warrant issued |
| 10/7/2017 | Bench Warrant Returned Executed, Held without Bond |
| 10/13/2017 | Probation Revoked, sentenced to 60 days |
| 11/29/2017 | Resentenced in 2015-CF3-9721 to 12 months by Parole commission for violating supervised release, in custody |
| 11/28/2018 | Released from custody |
| 12/29/2018 | Charged with fraud in Maryland (4E00498348) |
| 1/28/2019 | Arrested for Possession with intent to Distribute (No Papered) |
| 3/14/2019 | Arrested for Possession (No Papered) |
| 7/13/2019 | Arrested for Simple Assault x3 and fleeing, 2019-CMD-9298, released on personal recognizance |
| 8/9/2019 | Notice of Non-Compliance filed in case 2019-CMD-9298 |
| 9/12/2019 | Notice of Non-Compliance filed in case 2019-CMD-9298 |
| 9/13/2019 | Bench Warrant Issued |
| 11/15/2019 | While on pre-trial release in 2019-CMD-9298, arrested and charged with assault in 2019-CMD-14579, held for competency screening |
| 11/22/2019 | Found competent and released |
| 12/9/2019 | Failure to Appear, Bench Warrant Issued |
| 2/14/2020 | Bench Warrant Executed, charged with Bail Reform Action violations in 2020-CMD-2004, released into Specialized Supervision Unit |
| 3/04/2020 | Release revoked due to non-compliance |
| 3/6/2020 | Motion for Release Granted |
| 3/9/2020 | Failure to Appear, Bench Warrant Issued |
| 3/23/2020 | Defendant Arrested on Bench Warrant, released |

| | |
|---|---|
| 3/23/2020 | While on pre-trial release in 2019-CMD-9298 and 2020-CMD-2004, arrested in charged with 2nd Degree Assault in Maryland ID00415787, held in MD |
| 5/21/2021 | Pleads guilty to assault in Maryland case 1D00415787, sentenced to 18 months with 16 months suspended |
| 7/6/2021 | While on supervision in Maryland case 1D00415787 and pre-trial release in 2019-CMD-9298 and 2020-CMD-2004, arrested for armed robbery in Maryland case 138720C |
| 11/29/2021 | Pleads guilty to robbery in Maryland, sentenced to 12 months |
| 2/18/2022 | Released from Custody in Maryland |
| 4/27/2022 | While on supervision in Maryland case 1D00415787 and pre-trial release in 2019-CMD-9298 and 2020-CMD-2004, arrested in MD for disorderly conduct and assault, held without bond |
| 5/4/2022 | Bench warrant issued in Maryland case 1D00415787 |
| 6/21/2022 | Pleads guilty to disorderly conduct and sentenced to time served |
| 8/25/2022 | Fails to appear for a mental health assessment after becoming a loss of contact in his Maryland matter, 1D00415787, where he faces a suspended sentence of 16 months – a bench warrant was issued.  (Note: This warrant, which is non-extraditable from Washington, D.C., is still active, meaning if the defendant were released to his mother's home in Maryland, he would be arrested.) |
| 9/3/2022 | While on supervision in Maryland case 1D00415787, arrested for lewd and indecent Acts 2022-CDC-005198, released on personal recognizance |
| 9/21/2022 | While on supervision in Maryland case 1D00415787 and pre-trial release in 2022-CDC-005198, arrested in case 2022-CMD-5583 theft 2nd degree, released on personal recognizance |
| 10/12/2022 | Failure to appear, bench warrant issued |
| 10/18/2022 | Arrested for shoplifting (no papered), Bench Warrant Executed, Held without Bond |
| 10/26/2022 | Pleads guilty in 2022-CMD-005583, sentencing scheduled for 11/2/2022, released |

| | |
|---|---|
| 10/26/2022 | Pleads guilty in 2022-CDC-5198, sentencing scheduled for 11/2/2022, released |
| 11/2/2022 | Failure to Appear at Sentencing in both 2022-CMD-005583 and 2022-CDC-5198, Bench Warrant issued |
| 11/21/2022 | Arrested and charged with 4 counts of Assault on Police officer, 2022-CMD 6906, Held without Bond in 2022-CMD-005583 |
| 12/15/2022 | Pleads guilty, sentenced to 35 days in 2022-CMD-6906, 2 days in 2022 CDC-005198 |
| 12/21/2022 | Released from custody |
| 2/10/2023 | Arrested in present case. |

Finally, since arrest, the defendant has continued to commit violent acts while incarcerated. PSR para 5. On April 15, 2023, he was witnessed on surveillance camera assaulting another inmate by hitting the inmate in the face. *Id.* On April 22, 2023, the defendant became combative and aggressive towards officers regarding the defendant's request for a blanket. He ignored verbal commands from the officers and shoved an officer with his right shoulder to the officer's upper body. The defendant then spat directly in the officer's face. *Id.* All of this justifies sentencing Defendant Hamlin to the 39-month sentence requested by the government.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor strongly supports a sentence of incarceration of 39 months. Defendant Hamlin's criminal conduct on February 9, 2023, is simply one of multiple instances where he has committed violent acts against other people – showing a total disregard for the law. His willingness to attack a defenseless woman in the small, confined space of her elevator calls for a lengthy period of incarceration that will reflect the gravity of his crimes and promote respect for the law. Simply put, not a single prior instance of Defendant's Hamlin's interaction with the criminal justice system, including times when he was

released and provided with mental health counseling or substance abuse assistance, has promoted respect for the law. He has consistently engaged in continued criminal activity, despite having received multiple opportunities to prove otherwise.

### D. The Need for the Sentence to Afford Adequate Deterrence

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of not only a lengthy term of incarceration, but also of the maximum term of supervised release of three years. None of the prior sentences from any of the criminal cases, or even his arrest and his incarceration in this case have deterred him from committing other acts of violence. His unabated cycle of criminal conduct needs to be deterred through a term of imprisonment and supervised release. In fact, this is the only way to protect the public from Defendant Hamlin.

This lengthy sentence will also provide the Defendant the opportunity to take advantage of programs within the Bureau of Prisons, to include literacy programs, substance abuse counselling, and mental health treatment as noted in the Presentence Report at para. 131-135, including the Bureau Literacy Program, the Challenge Program, the Steps Toward Awareness, Growth and Emotional Strength Program, the Drug Abuse Education Program, or the Nonresidential Drug Abuse Program.

Distressingly, while the Presentence Report notes that the Defendant has a lengthy history of substance abuse and was reported to be under the influence of illegal drugs during the assault (PSR para. 105-106), he reportedly stated he does not feel he is currently in need of substance abuse treatment services. PSR para. 107. This lack of personal insight into the defendant's own history demonstrates the need for a time period both to reflect, and for the defendant to take advantage of programs that will enable him to develop personal responsibility. It is foreseeable

that a quick release from prison will only lead to future victimization if the defendant does not gain insight into his own responsibility for his conduct.

In addition to the need for the 39-months sentence, a substantial period of supervised release is necessary to enable the defendant to take advantage of the available support programming and to serve as a deterrent from committing further offenses. Three years of supervised release following his period of incarceration is necessary to guide the defendant upon his release, and increases the chance he will be adequately rehabilitated before he re-enters society unsupervised.

## CONCLUSION

The government's recommended sentence appropriately balances the sentencing factors applicable to this case. For the foregoing reasons, the government requests that the Court sentence the defendant, Kendrid Khalil Hamlin, to a total sentence of 39 months of incarceration followed by three years of supervised release.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

*/s/ Alexander R. Schneider*
Alexander R. Schneider
Michigan Bar #P71467
Special Assistant United States Attorney
601 D Street, N.W.
Washington, DC 20579
Phone: (202) 252-7124
Email: alexander.schneider@usdoj.gov